**JAMES BURROUGH LIMITED and Kobrand Corporation, Plaintiffs-Appellants,**

v.

**SIGN OF the BEEFEATER, INC. and Montgomery Ward & Co., Incorporated, Defendants-Appellees.**

**No. 77–1740.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1978.

Decided March 1, 1978.

Rehearing and Rehearing En Banc Denied May 31, 1978.

---

Henry W. Lauterstein, New York City, W. Thomas Hofstetter, Chicago, Ill., for plaintiffs-appellants.

Albert E. Jenner, Jr., Chicago, Ill., for defendants-appellees.

Before SWYGERT and CUMMINGS, Circuit Judges, and EAST, Senior District Judge.[1]

PER CURIAM.

For the second time in this trademark infringement case, the plaintiffs-appellants (Distiller) appeal from a judgment in favor of the defendants-appellees (Restaurant). At the initial trial, the district judge granted Restaurant's motion for a directed verdict at the close of the plaintiffs' evidence and dismissed the complaint. We reversed and remanded the case for further proceedings. 540 F.2d 266 (7th Cir. 1976).

In our decision we delineated the test to be used in determining trademark infringement. We noted that besides the opposing parties, "the consuming public, is present and its interests are paramount. Hence infringement is found when the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public." 540 F.2d at 274. We also held that the district court erred in considering certain factors in its decision to direct a verdict for Restaurant. We held that a judicial side-by-side comparison of Distiller's label and Restaurant's sign was impermissible. "[T]he test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id.* at 275. Second, we held, "It was likewise error below to postulate a requirement that Distiller suffer 'economic disadvantage' or that Restaurant's use of its sign be 'economically harmful' to Distiller." *Id.* Third, we held that "the fame of Distiller's mark BEEFEATER precludes limitation of its effect in the marketplace to merely a trademark for gin and renders erroneous the district court's finding 'that the registered word Beefeater gives plaintiff an exclusivity in the use of that word limited in its application to alcoholic beverages.'" *Id.* at 276–77 (footnote omitted). Finally, we rejected the district court's analysis and conclusions regarding the plaintiffs' consumer survey. We said in part: "The record, as it now stands, establishes the consumer survey herein to have been fairly and significantly conducted by qualified experts and impartial interviewers." In conclusion Judge Markey wrote:

In the absence of contrary evidence, therefore, it must be presumed that at least 15% of the restaurant-going public, upon seeing the accused sign, would mistakenly believe that Distiller is "sponsoring or promoting" the restaurant identified by that sign. That mistaken belief evidences a likelihood of confusion, deception, or mistake regarding the sponsorship of Restaurant's services sufficient on

---

1. The Honorable William G. East, United States Senior District Judge for the District of Oregon, is sitting by designation.

this record to establish Distiller's right to relief.

540 F.2d at 279 (footnote omitted).

Following remand, Restaurant had its own consumer survey conducted. At the second bench trial, Distiller chose to rest as its case-in-chief on the evidence presented at the first trial. Restaurant introduced its survey and five witnesses, including Dr. Kenneth Prewitt, a political science expert with no market research experience, who testified that Distiller's survey was unreliable because the key question was leading. In rebuttal, Distiller called Dr. Michael Ray, a psychologist and market research expert, who supported the validity of Distiller's survey. The district judge credited Restaurant's expert over Distiller's expert regarding the surveys, and on other points generally followed the reasoning it had adopted at the initial trial. The judge made numerous findings of fact and conclusions of law and entered judgment in favor of Restaurant.[2]

On appeal Distiller contends first, that the trial court did not follow the law of the case upon remand, and second, that the trial court erred in holding for Restaurant on the issue of laches and estoppel.

## I

When a court states a rule of law which is to be applied in the case before it, the court establishes the "law of the case" that will normally be applied to the same issues in subsequent proceedings in that case. "The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting, Refining & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950). On remand a trial court is bound by enunciations of law made at the appellate level.

Although the district judge correctly noted that no one factor is *per se* determinative in an infringement action, he unfortunately gave improper consideration to certain factors that should not have been considered. First, he stressed the absence of competition between the parties. In his memorandum opinion, the judge stated that the "use of the word beefeater on a competing liquor product would give plaintiff a compelling case," but the use of the word "on the sign of . . . a family restaurant gives plaintiff no basis at all for a claim," that in such a case, "there is no real likelihood of confusion . . . in the commercial sense, which is detrimental to the sales or business image of the plaintiff." When a particular mark is famous and has acquired secondary meaning, as is true in the case of Beefeater Gin, it is error to limit the effect of the mark to a competing liquor product, or even to a restaurant which sells liquor. As we noted earlier, "[a] mark that is strong because of its fame or its uniqueness, is more likely to be remembered and more likely to be associated in the public mind with a greater breadth of products or services, than is a mark that is weak . . . ." 540 F.2d at 276.

The district judge also stated that "since [Distiller's] label and the accused sign have nothing in common but a single word, there has been no reproduction, copying or colorable imitation [and] the concept of likelihood of confusion never becomes relevant." On the previous appeal, we noted the judge's failure to give sufficient weight to the predominant feature of the marks in this case—the single word BEEFEATER. 540 F.2d at 276. *See also Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 383 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). We therefore hold the repetition of this failure to be in error.

In our prior opinion we stated that absent the presentation of contrary evidence at retrial, the judge would be obliged to find Distiller entitled to relief for trade-

2. *James Burrough Limited v. Sign of the Beefeater, Inc.*, No. 75 C 385 (N.D.Ill., June 8, 1977).

mark infringement. 540 F.2d at 279. We also noted that, depending upon the circumstances of the individual case, this court is as capable as the trial court of determining whether the evidence, as a matter of law, was sufficient to establish a right to relief. *Id.* at 273. Upon retrial, the evidence offered by Restaurant failed to refute the evidence which had previously been offered by Distiller and which had shown the likelihood of confusion as to the source of origin. In fact, Restaurant's survey provided additional evidence of actual confusion.[3] We therefore hold the trial court's finding of no likelihood of confusion to be clearly erroneous and reverse the judgment of that court as to Distiller's right to injunctive relief.[4]

## II

■■■ Distiller also contends that the trial judge erred in holding for Restaurant on the issue of laches and estoppel. Distiller maintains that even if laches were to be held applicable in the case at bar, Distiller would nonetheless be entitled to both injunctive relief and an accounting of profits wrongfully derived by Restaurant through the opening of new restaurants since the filing of this action. It is important to recognize the interrelationship between the types of relief requested by Distiller (an injunction as well as damages and an accounting of profits) and the defenses asserted by Restaurant (laches and estoppel). By reason of laches, a plaintiff in a trademark infringement action may lose the right to recover damages or wrongfully derived profits during the period prior to the filing of suit. Upon a showing of infringement, however, the plaintiff may still be entitled to injunctive relief, *McLean v. Fleming*, 96 U.S. 245, 24 L.Ed. 828 (1877), and to damages and profits for the period subsequent to the filing of suit. Trademark infringement is a continuous wrong and, as such, gives rise to a claim for relief as long as the infringement persists. 4 Callmann, *Unfair Competition Trademarks and Monopolies* § 87.5, at 157.

■■ When considering a defense of estoppel in a case such as this one, a court must keep in mind the fact that a trademark infringement action involves not only the right of the trademark owner to control the reputation of his product, but also the right of the consuming public to be free of confusion. 540 F.2d at 274.

■■ Under the uncontested facts of this case, it is clear that Distiller delayed instituting suit for infringement for an unreasonable period of time after becoming aware of the "Sign of the Beefeater" restaurants.[5] For this reason, the equitable doctrine of laches precludes recovery by Distiller of damages or profits for the period prior to the filing of its suit. In fact, Distiller concedes as much. It is also clear, however, that Restaurant and its predecessors were aware of the potential risk involved in opening additional restaurants once this action was filed. We are therefore unable to find the requisites for appli-

---

**3.** Evidence of actual confusion is not necessary to establish infringement since likelihood of confusion is the gravamen of the action. Yet evidence of actual confusion has often been viewed as the best evidence of the likelihood of confusion. See the cases listed in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 383 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976), and in 4 Callmann, *Unfair Competition Trademarks and Monopolies* § 80.6, at 564.

**4.** Because we find that both surveys evidence likelihood of confusion as to Distiller's sponsorship or promotion of the restaurants, it is unnecessary to reach Distiller's additional contention that the trial judge erroneously excluded actual confusion testimony of respondents from the Chicago portion of Restaurant's survey.

**5.** *See* 540 F.2d at 270 n. 6. We disagree with Distiller's contention that the litigation in the United States Patent and Trademark Office with regard to Restaurant's two applications to register the mark "Sign of the Beefeater" is evidence of Distiller's ongoing objection to Restaurant's use of the mark. Notice of Opposition to Registration is not a claim of infringement; it is merely an assertion by the owner of a trademark that the applicant's proposed mark is likely to confuse the public as to the source of the product or service, and simply seeks to prevent the proposed registration. *Merrick v. Sharp & Dohme*, 185 F.2d 713, 716–17 (7th Cir. 1951).

cation of the doctrine of estoppel. *See Lebold v. Inland Steel Co.*, 125 F.2d 369, 375 (7th Cir. 1941).

In sum, we hold that the trial court erred in concluding (1) that Distiller did not establish its right to relief for trademark infringement and (2) that in any event estoppel bars the action. We affirm the court's conclusion that laches applies. Because laches is applicable, Distiller is only entitled to an accounting of profits wrongfully derived by Restaurant through the opening of new restaurants since the filing of this action.

The judgment is reversed and the cause is remanded for the entry of an appropriate injunction and for an accounting of profits and damages.