The FINANCE COMPANY
OF AMERICA

v.

BANKAMERICA CORPORATION et al.

Civ. No. Y–79–1959.

United States District Court,
D. Maryland.

Dec. 8, 1980.

See also D.C., 493 F.Supp. 895.

Paul Vettori, Baltimore, Md., for plaintiff; Alfred H. Moses and Gary R. Roberts, Washington, D.C., of counsel.

David F. Albright, Franklin T. Caudill, William L. Hallam, Baltimore, Md., for defendants; Milton W. Schlemmer and Nancy E. Martin, San Francisco, Cal., of counsel.

JOSEPH H. YOUNG, District Judge.

The defendants have filed a motion for summary judgment based upon the plaintiff's alleged inexcusable delay in instituting this action and the plaintiff has filed a motion for partial summary judgment on the issue of liability resulting from the defendants alleged infringement of the plaintiff's service mark and unfair competition. For reasons set forth below, both motions must be denied.

*Defendants' Motion for Summary Judgment*

The issue raised by the defendants' motion for summary judgment is whether the plaintiff is barred from bringing this action because of a five year delay from the time the plaintiff learned of the defendants' use of the service mark "FinanceAmerica" and the trade name "FinanceAmerica Corporation" until the time that the plaintiff filed this action in this Court. The plaintiff first learned of that use of the defendants at some time around mid–October of 1974. By letter of December 30, 1974, to FinanceAmerica's President, plaintiff's counsel notified defendants of the plaintiff's objection to the use and requested FinanceAmerica Corporation to abandon such use. FinanceAmerica rejected the request by letter of January 10, 1975, and on February 10, 1975,

defendant, BankAmerica Corporation, filed an application in the United States Patent and Trademark Office for registration of the service mark "FinanceAmerica." The plaintiff opposed such registration and the administrative proceedings continued in that forum until October 11, 1979, when the Trademark Trial and Appeal Board ("TTAB") of the Patent and Trademark Office issued a decision sustaining the plaintiff's opposition. The plaintiff filed suit in this Court on October 22, 1979, less than two weeks after the decision of the TTAB, but approximately five years after it had first learned of the defendants' use of the mark. The defendants rely upon the doctrines of laches and acquiescence, and estoppel by laches in support of their assertion that the plaintiff should be barred from seeking either monetary or equitable relief as a result of that five year delay.

 Mere delay in bringing suit is not, of itself, sufficient to constitute laches in a trademark infringement case.* *Rothman v. Greyhound Corp.*, 175 F.2d 893, 895 (4th Cir. 1949). Instead, the defendants must establish that the delay was unreasonable or inexcusable and that the defendant has suffered injury or prejudice as a result of the delay. *Gardner v. Panama Railroad Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) (per curiam); *Tobacco Workers International Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958 (4th Cir. 1971). Laches is an equitable defense which depends on the particular circumstances of each case and is a question primarily addressed to the discretion of the trial court. *Gardner, supra*, 342 U.S. at 30, 72 S.Ct. at 13.

 The delay in the instant case was not unreasonable or inexcusable. The plaintiff waited five years before filing this action because it had made a decision not to file suit until the TTAB released its opinion.

During that period, the plaintiff did not indicate any intention to abandon what it perceived as its legal rights. Rather, it chose to participate in the administrative proceedings in the Patent and Trademark Office, a forum which was originally chosen by the defendant, BankAmerica Corporation. The fact that those proceedings concerned the right to register the mark as opposed to the right to continue using the mark does not render the plaintiff's course of action unreasonable or inexcusable. The issue of the likelihood of confusion was of central importance in those proceedings just as it is in the proceedings before this Court. Without implying any opinion as to the correctness of the decision in those proceedings or to their applicability to this action, it was not unreasonable for the plaintiff to go along with the submission to that forum of the factual issue of the likelihood of confusion. The TTAB has a unique degree of expertise in cases of this nature and it was certainly within the realm of possibility that a factual determination by that board might result in a resolution of the entire dispute. That the plaintiff chose not to exercise its option to file a civil action for infringement and unfair competition at an earlier time and to have the administrative proceedings suspended pending the outcome of the civil action does not seem unreasonable within the context of this entire dispute.

The principal authority cited by the defendants for the assertion that a pending administrative proceeding does not constitute a sufficient excuse to avoid the defense of laches is *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574 (7th Cir. 1978). In that case, the Court held that the plaintiff had delayed instituting suit for infringement for an unreasonable period of time and was therefore precluded by laches from recovery of damages or profits for the

* Both sides acknowledge that there is no controlling statute of limitations in this action. The defendants have asserted that the general three year Maryland statute of limitations for civil actions should be considered as a guideline by this Court in making the determination of whether the five year delay in this case was unreasonable. This Court has considered the statute as one of the many factors determining the reasonableness of plaintiff's action but, as the result reached by this Court indicates, has not found the general statutory limitation compelling.

period prior to the filing of its suit. In a footnote, the Court rejected the plaintiff's contention that litigation in the United States Patent and Trademark Office was evidence of plaintiff's ongoing objection to the defendant's use of the mark, on the basis that opposition to registration is not a claim of infringement. 572 F.2d at 578 n.5. This Court agrees with the Court in *Burrough* that action in opposing a registration in the Patent and Trademark Office is not a claim of infringement. However, in the present case, the plaintiff had put the defendants on notice as early as December, 1974, of its position that the defendants' use constituted infringement and that the plaintiff intended to pursue other avenues of legal redress beyond the opposition in the registration proceedings. As early as May 20, 1975, the plaintiff expressly stated its intention "absent a satisfactory resolution of this matter–to exercise its legal rights by seeking whatever remedies may be appropriate, either in the Patent Office or in the courts." (Exhibit D, Plaintiff's Opposition to Defendants' Motion for Summary Judgment). By letter of March 1, 1977, plaintiff's counsel informed defendants that his client intended to seek injunctive relief in Federal court as soon as the administrative proceeding was completed. (Exhibit G, Plaintiff's Opposition to Defendants' Motion for Summary Judgment). The circumstances of this case thus distinguish it from the facts of *Burroughs* and make it more analogous to the decision in *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341 (E.D.Pa.1972), *aff'd*, 480 F.2d 917 (3rd Cir. 1973). In that case, the Court held that the defenses of laches and equitable estoppel were not available to a defendant who had begun registration proceedings in an administrative forum which ultimately resulted in a five year delay in the filing of civil litigation in federal court. The Court recognized the differences between a registration proceeding and an infringement action but decided that where the grounds on which the Notice of Opposition was based were virtually identical to those required in an infringement action, *i. e.*, likelihood of confusion,

that the opposition put the defendant on notice that the plaintiff was not going to "sleep on its rights" and that it protested the defendants use of the confusingly similar mark. 350 F.Supp. at 1367. The defendants here attempt to distinguish *Dunhill* by pointing out that the administrative proceedings there eventually resulted in a default by the defendant and that the plaintiff was simultaneously asserting its trademark rights against at least four other alleged infringers during the five year delay. This Court does not believe such differences distinguish *Dunhill* because the default aspect of *Dunhill* was only relevant insofar as it effected the reasonableness of plaintiff's decision to participate in the administrative proceedings while delaying an infringement action and the Court specifically found that even if the other infringement litigation did not suffice as sole justification for the delay, additional grounds could be found to justify it. 350 F.Supp. at 1366. In a case such as the present, where the parties were vigorously involved in disputing the issue of likelihood of confusion before the TTAB, and the plaintiff had put the defendant on notice of its intention to pursue an infringement action upon termination of the administrative proceeding, this Court finds that the five year delay was neither unreasonable nor inexcusable.

■■ Furthermore, the defendants have not sustained their burden of showing that they have suffered prejudice as a result of the delay. There are two kinds of prejudice which can be asserted to support a defense of laches: (1) the delay has resulted in the loss of evidence which would support the defendants' position; or (2) the defendant has changed their position in a way that would not have occurred if the plaintiff had not delayed. *Tobacco Workers International Union, supra*, at 958–59. The defendants apparently do not rely on the first type of prejudice and, indeed, could not as the evidence has, if anything, increased as a result of the delay. As for prejudice allegedly resulting from the large expenditures of defendants in promoting their use of the disputed mark, such actions were taken

with the complete realization that the plaintiff disputed their use and did not intend to acquiesce in it. That defendants made a business judgment to go ahead with its use despite the possibility, and concomitant risks, of legal action by the plaintiff cannot now be used to bar the plaintiff from pursuing its legal rights. As the Court in *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965) observed:

> "If this prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay."

This Court takes no position at this time on the issue of whether defendants' use is infringing or not, but does not view the expenditures of defendants in promoting that use to constitute sufficient prejudice. Furthermore, should the use prove not to be infringing, there would be no prejudice because the defendants would then be entitled to go on using the mark and benefiting from their previous expenditures.

■ The decision of this Court that summary judgment can not be granted in favor of defendants on the issue of laches makes it unnecessary to consider if defendants have established the more stringent requirements for estoppel. Even had defendants been able to assert successfully at this time the defense of laches, the plaintiff would still have been able to seek prospective damages and injunctive relief because laches only bars damages incurred prior to the institution of a trademark infringement action. *Rothman v. Greyhound, supra,* at 895; *James Burrough, supra,* at 578. In order for the defendants to bar all relief sought by the plaintiff, they would have to establish that the plaintiff has acted as to mislead the defendants and that thus misled, the defendants have relied upon the action of the plaintiff to their prejudice. *Lebold v. Inland Steel Co.*, 125 F.2d 369, 375 (7th Cir. 1942).

The rejection of these defenses on motion for summary judgment does not bar the defendants from asserting them during trial should additional evidence be made available to the Court. Furthermore, the very same factors considered with regard to these defenses may become relevant in the event that the plaintiff prevails on the merits at trial and this Court is forced to exercise its discretion in determining the appropriate remedies. *See Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947).

*Plaintiff's Motion for Partial Summary Judgment*

■ The plaintiff has moved for partial summary judgment on the grounds that "the uncontroverted facts in this case make it impossible as a matter of law for defendants to meet their heavy burden of proof on all factual issues relating to liability arising from a decision of the [TTAB] adverse to them on the identical factual issues." (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, p. 1). This Court finds the argument of plaintiff on this motion unpersuasive and will deny the motion for partial summary judgment.

There has been very little, if anything, thus far in this case that could be called "uncontroverted," particularly on matters of a factual nature going to the merits of this dispute. This Court is unwilling to decide at this time the weight to be attached to the findings and decision of the TTAB. That ruling has been appealed to the United States Court of Customs and Patent Appeals and according to counsel for the plaintiff a decision on the appeal is expected by early to mid–December. Whatever the outcome of that proceeding is, this Court will be prepared to accept before trial legal arguments on the weight that is to be attached in this action to the proceedings and results of that action. However, at this time summary judgment on the merits of this dispute is totally inappropriate and thus the plaintiff's motion for partial summary judgment will be denied.

Accordingly, it is this 8th day of December, 1980, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendants' motion for summary judgment be, and the same is, hereby DENIED;

2. That the plaintiff's motion for partial summary judgment be, and the same is, hereby DENIED.